# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| REX OWEN FRESHOUR, | |
| Plaintiff, | |
| v. | Case No. 3:14-cv-1933 JVB |
| CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security Administration, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Rex Freshour seeks judicial review of the Acting Social Security Commissioner's decision denying him disability insurance and supplemental income benefits, and asks this Court to remand the case. For the reasons below, the Court affirms the decision of the Acting Commissioner.

**A.    Overview of the Case**

Plaintiff was fifty-four years old at the time of the hearing before an Administrative Law Judge (ALJ). He alleges that he became disabled in May 2010, after suffering a motorcycle accident. The ALJ found that Plaintiff had three severe impairments: cervical radiculopathy/spondylosis, vison loss, and hearing loss. The ALJ also found that Plaintiff became disabled as of January 23, 2014, when he turned 55. However, before that date, Plaintiff was able to perform a number of light unskilled jobs in the regional economy.

B.   **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must ensure that the ALJ has built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

C.   **Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

D.   **Analysis**

Plaintiff argues that the ALJ committed two errors: (1) he failed to explain why he was discounting the opinion of Dr. Todd Graham, Plaintiff's treating physician; and (2) he didn't support his credibility findings by the evidence in the case.

**(1)** *The ALJ sufficiently explained why he discounted Dr. Graham's opinion*

Plaintiff claims that the ALJ failed to give controlling weight to the opinion of Dr. Graham, Plaintiff's treating physician, without explaining why.[1] In response to Plaintiff's attorney's request, in October 2012, Dr. Graham sent him a letter explaining Plaintiff's course of treatment over the previous year and concluding that Plaintiff "is unable to perform continuous work at a sedentary or light physical demand level for a period of 12 months . . . on a sustained 8 hour day, 5 days a week basis . . .." (R. at 232.) A year later, Dr. Graham sent the attorney another letter with an update on Plaintiff's condition, once again opining that Plaintiff was unable to work. The ALJ gave those opinions little weight, but contrary to Plaintiff's contention, he explained that he was doing so because the opinions weren't supported by the record as a whole or by Dr. Graham's own treatment notes, and the opinions contradicted the examining physician and the state agency medical consultants.

For example, Plaintiff's neurosurgeon, Dr. Stephen Smith's, treatment notes from October 2010 show, that while Plaintiff was complaining of significant neck pain, he had normal motor strength, intact sensory response in both upper extremities, without any evidence of spinal cord pathology. (R. at 169.) Dr. Smith also noted that Plaintiff's MRI "does not reveal any traumatic disc ruptures, any major narrowings." (R. 168.) Furthermore, "[t]here are no finding of myelopathy," "[h]is Hoffmann's and Tromner's signs are negative," and "he has good sensations throughout both upper extremities." (*Id*.) Finally, Dr. Smith indicated that Plaintiff could benefit from physical therapy and injections, but that he was not a candidate for surgery. (R. 168—69.) In a word, the ALJ could use this information to reasonably conclude that, while Plaintiff's

---

[1] The Acting Commissioner points out in her brief that Plaintiff is relying on evidence not submitted before the ALJ. (*See* Pl.'s Opening Brief, DE 14 at 13 citing R. at 267—69; at 14 citing R. at 278; at 16 citing R. at 261, 265, 267—69, 272.) In his reply brief, Plaintiff concedes that the case should be reviewed without reference to the new evidence.

complaints of pain were real, the pain did not have an incapacitating effect. Although the ALJ did not set out this information in the same detail as here, he summarized it in his findings.

Plaintiff insists that the ALJ wrongly assumed that just because he was not a candidate for surgery, he was not really disabled. But the ALJ made no such assumption. Rather, the ALJ relied on Dr. Smith's treatment notes which documented his objective medical findings.

The ALJ also relied on the opinions of the State agency physicians. In particular, during his examination of Plaintiff, Dr. K. Osei noted that he walked with normal gait, could get on and off the exam table by himself and out of chair without difficulty, had 5/5 bilateral grip strength and could perform find and gross evaluations. Dr. Osei observed that Plaintiff had mild to moderate pain in the neck, and the pain was stable. Again, the ALJ reasonably relied on Dr. Osei to discount Dr. Graham's conclusions.[2]

Finally, the ALJ observed that Dr. Graham's treatment notes did not corroborate Dr. Graham's opinion on Plaintiff's disability as the notes failed to reveal significant abnormalities. Treatment notes show Plaintiff was progressing well and his main impairment was the reduced range of motion of the neck. While the ALJ could have been more detailed in setting forth the details of Dr. Graham's treatment notes, he built a sufficiently strong bridge from the evidence to his conclusions.

**(2)** *The ALJ's credibility determination is supported by substantial evidence*

The ALJ's credibility determinations are entitled to deference because the ALJ is "in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th

---

[2] Plaintiff argues that Dr. Osei's examination report cannot be considered because it was not signed by him. The Court does not understand this argument. While the image quality on the range of motion chart is not in high definition (R. at 219), it sure looks like the signature on the previous page (R. at 218), which Plaintiff agrees to be Dr. Osei's signature.

Cir. 2014). Thus, a credibility determination will be upheld as long as it is explained in a way that allows the court to determine that the ALJ logically based the determination on specific findings and record evidence. *Id.* at 816.

Plaintiff argues that the ALJ discredited Dr. Graham's opinion and the testimony of Plaintiff and his wife without sufficient explanation. In addition, Plaintiff contends that the ALJ did not consider his complaints of pain that were noted and recorded by the doctors.

As set out above, the ALJ explained sufficiently why he discredited Dr. Graham's opinion regarding Plaintiff's ability to work. As for his complaints about pain, which he reiterated at the hearing and which were also backed up by his wife, the ALJ found them believable but not to the extent claimed by him. That is one reason why the ALJ found him to be disabled beginning on January 23, 2014.

In addition, the ALJ noted that, although Plaintiff claimed disability, he was able to work part time as a handyman, help a friend repair a truck, go canoeing, and shovel rocks from landscaping. While Plaintiff now insists that he could do these activities only for a short period of time and required extended breaks afterwards, there's nothing in the record to suggest that the ALJ had to accept these reservations. Rather, the record points to a person who had experienced neck pain, but which was mostly controlled by conservative treatment.

**E. Conclusion**

The Court agrees with the Acting Commissioner that there was some evidence supporting Dr. Graham's opinion, but there was also substantial evidence upon which the ALJ based his decision. For this reason, the Court affirms it.

SO ORDERED on March 30, 2016.

 S/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE